BELEY et al. v. NAPHTALY.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1896.)

No. 251.

1. PUBLIC LANDS—RULINGS OF SECRETARY OF INTERIOR—REVERSAL BY SUCCESSOR.

The ruling of a secretary of the interior finally disposing of an application to purchase public land may, on a reasonable application, be reconsidered and reversed by his successor, when no steps have been taken looking to the conclusion of the proceedings, in accordance with the original decision. Noble v. Railroad Co., 13 Sup. Ct. 271, 147 U. S. 165, and U. S. v. Stone, 2 Wall. 537, distinguished. New Orleans v. Paine, 13 Sup. Ct. 303, 147 U. S. 261, followed.

2. SAME—REJECTED MEXICAN GRANTS—RIGHT OF OCCUPANT TO PURCHASE.

Under section 7 of the act of July 23, 1866, one who purchased in good faith the title of a supposed Mexican grantee while the claim was being prosecuted before the tribunals authorized by our government to settle such titles, and who continued in possession of the land, had a preferred right of purchase from the United States, although the claim was finally rejected, on the ground that no grant was in fact ever made by the Mexican government.

3. SAME—ASSIGNABILITY OF RIGHT OF PURCHASE.

The preferred right of purchase given by this statute is assignable, and a valid assignment may be taken even by one having notice of the final rejection of the claim.

4. SAME—CONCLUSIVENESS OF PATENT AS AGAINST TRESPASSERS.

As against mere intruders who have ousted plaintiff from the peaceable possession of a rejected Mexican grant, for which he has obtained a patent as a preferred purchaser under the act of July 23, 1866, § 7, the patent is conclusive; and it cannot be collaterally attacked by evidence offered for the purpose of showing that he was not entitled to the benefit of the act.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action by Joseph Naphtaly against Julius Beley and others to recover possession of various parcels of land in Contra Costa county, Cal. Plaintiff recovered a judgment in the circuit court, and defendants sued out this writ of error.

H. F. Crane and Philip Teare, for plaintiffs in error.

A. L. Rhodes, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and MORROW, District Judge.

ROSS, Circuit Judge. This action was brought by the plaintiff (defendant in error here) to recover the possession of various lots and parcels of land described according to the public surveys of

the United States. situated in Contra Costa county, Cal., and also damages for the withholding thereof, the plaintiff relying for title thereto upon two patents issued by the government of the United States, pursuant to an approved application by him to purchase the lands under and by virtue of the seventh section of the act of congress of July 23, 1866, entitled "An act to quiet land titles in California" (14 Stat. 218). That section provides:

"That where persons, in good faith and for a valuable consideration, have purchased land of Mexican grantees or assigns, which grants have subsequently been rejected, or where the lands so purchased have been excluded from the final survey of any Mexican grant, and have used, improved, and continued in the actual possession of the same according to the lines of their original purchase, and where no valid adverse right or title (except of the United States) exists, such purchasers may purchase the same after having such lands surveyed under existing laws at the minimum price established by law, upon first making proofs of the facts as required in this section, under regulations to be provided by the commissioner of the general land office."

The bill of exceptions recites that on the trial, after introducing the patents in evidence, the plaintiff proved that, when he was in the quiet and peaceable possession of the lands, the defendants entered thereon, and ousted the plaintiff therefrom, and have since withheld the lands from him; that the plaintiff also proved the rental value of the premises; and that it was then admitted by the counsel for the defendants that, at the time of the issuance of the patents, the lands in question were public lands of the United States, subject to sale under its laws, and "that defendants did not propose to connect themselves in any manner or form with the title of the United States to the premises described in the complaint herein (and in the patents), or any part thereof, either by certificate of purchase, patent, or anything of the kind."

Confessedly, therefore, the defendants are mere naked trespassers. As such, they claimed the right in the court below to attack the validity of the patents issued to the plaintiff in the action, and, for that purpose, offered in evidence the following documents: First. The application of the plaintiff to purchase the lands from the United States, under and pursuant to the provisions of the seventh section of the act of July 23, 1866, which application set forth, among other things, that the lands were included within the exterior limits and formed part of a grant made by the Mexican government in the year 1844 to Inocencio, José, and Mariano Romero, three brothers, who presented their claim thereto for confirmation to the board of land commissioners created by the act of congress of 1851 for the ascertainment and settlement of private land claims in California, which claim was rejected by the commission, and afterwards, on appeal, by the United States district court for California and by the supreme court; that in 1846 or 1847 the Romero brothers partitioned the lands claimed by them under the grant, Inocencio taking that part thereof embraced within a certain inclosure, and including the lands sought to be purchased by the applicant; and that Inocencio Romero used and cultivated the same until December 26, 1853, when he sold and conveyed the same, for value, to Domingo Pujol and Francisco San-

jurjo, who entered into possession of the lands within the inclosure, and used, improved, and continued in the actual possession of those lands, according to the lines of their original purchase, until February 14, 1855, when they sold and conveyed the same, for value, to one J. W. Tice, who entered into the possession thereof, used, improved, and cultivated the same, and continued in the actual possession thereof until August 8, 1859, when he conveyed the same, and transferred the possession thereof to one S. P. Millett; that Millett then entered into the possession of the lands so inclosed, used, improved, and cultivated the same, and continued in the actual possession thereof, according to the lines of the original purchase, until 1868, when he conveyed the same to D. P. Smith, who, in February, 1869, conveyed the same to J. P. Spring, who, in March, 1869, conveyed the same to Martin Clark, who, on May 15, 1876, conveyed the same to the applicant, Naphtaly; that the conveyance to Smith was made, according to the information and belief of the applicant, for the benefit of Millett, and the conveyances to Spring and Clark were made for the benefit of the applicant, who entered into the exclusive possession of the lands, according to the lines of the original purchase made by Pujol and Sanjurjo from Inocencio Romero, according to the information and belief of the applicant; that, according to his information and belief, the applicant and his grantors and predecessors in interest have been in the actual and continuous possession of the lands sought to be purchased by him ever since the year 1847, according to the lines of the original purchase; that on July 23, 1866, there was no adverse claim by any person to the lands, or any part thereof; that they are not mineral lands, and have not been reserved to the United States for any purpose. Second. The record of the Romero claim from the office of the surveyor general of the United States for California. Third. The opinion and decree of the board of land commissioners rejecting the claim. Fourth. The opinion and judgment of the United States district court for the district of California, as reported in 1 Hoff. Land Cas. 219, Fed. Cas. No. 12,029, affirming the decision of the commissioners. Fifth. The opinion and judgment of the supreme court of the United States, as reported in 1 Wall. 721, affirming the decision of the district court. Sixth. The opinion and decision of the commissioner of the general land office rejecting the application of Naphtaly to purchase the lands. Seventh. The opinion and decision of Secretary of the Interior Vilas, as reported in 8 Land Dec. Dep. Int. 144, affirming the decision of the commissioner of the general land office. Eighth. The opinion and decision of Acting Secretary of the Interior Chandler, as reported in 12 Land Dec. Dep. Int. 667, ordering a rehearing of the application to purchase. Ninth. The opinion and decision of Secretary of the Interior Noble on the rehearing, as reported in 14 Land Dec. Dep. Int. 536, approving the application, and directing patents for the lands in question to be issued to the applicant. To each and all of the documents so offered in evidence, the plaintiff objected, on the ground that such evidence was immaterial, incompetent, and irrelevant. The action

of the court below in sustaining the objections, and excluding the documents, constitutes the grounds of the appeal.

Assuming that the defendants, being admittedly mere naked trespassers upon the lands in question, are entitled to attack the patents issued to the plaintiff, we proceed to inquire whether any of the documents offered in evidence tend to affect their validity. Beyond question, the patents are absolutely conclusive in respect to all matters of fact properly cognizable by the officers of the land department. The decisions of the supreme court and of other courts to this effect are so numerous as to render their citation no longer necessary. The real ground of the defendants' contention, however, is that inasmuch as it was found and held by the United States tribunals that no grant was ever made by the Mexican government to the Romeros, nor anything in the semblance of a grant, there was absolutely no case presented by the applicant, Naphtaly, to the officers of the land department, for the application of the provisions of the seventh section of the act of congress of July 23, 1866, and that the disposal of the lands in question to the applicant by virtue of those provisions was beyond the power of the secretary of the interior, because unauthorized by law. It is also contended by defendants that one secretary of the interior has no power to grant a rehearing of a case decided by his predecessor, and that the reconsideration of Naphtaly's application to purchase by Mr. Secretary Noble, and its allowance by him, were, therefore, without authority of law, and void. Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, and U. S. v. Stone, 2 Wall. 537, are cited in support of this position; but neither of those cases at all supports it. In Noble v. Railroad Co., the company, desiring to avail itself of the act of congress of March 3, 1875 (18 Stat. 482), granting to railroads a right of way through the public lands, took the steps required by the statute to secure that right. When all of those requirements had been observed, the secretary of the interior was authorized to approve the profile of the road, and to cause such approval to be noted upon the plats in the land office of the district where such land was located; and thereupon the granting section of the act became operative, and vested in the company the right of way. The court held that, after this was done, it was beyond the power of a succeeding secretary to revoke the action of his predecessor in office, for the title had already passed to the grantee. In U. S. v. Stone, the secretary of the interior undertook to revoke a patent that had been signed by the president, and issued. But where, as in this case, no steps had been taken even looking to the conclusion of the proceedings in accordance with the ruling of the secretary of the interior, there can be no doubt of his power or of that of his successor in office, upon a seasonable application, to reconsider any ruling in respect to the proper disposition of the lands.

As said by the supreme court in New Orleans v. Paine, 147 U. S. 261, 13 Sup. Ct. 303:

"Until the matter is closed by final action, the proceedings of an officer of a department are as much open to review or reversal by himself or his successor

as are the interlocutory decrees of a court open to review upon the final hearing."

See, also, U. S. v. Schurz, 102 U. S. 378; Leroy v. Jamison, 3 Sawy. 389, Fed. Cas. No. 8,271.

The documents offered in evidence bearing date during the Mexican rule are as follows: (1) A petition, signed by the claimants, and dated at Monterey, on the 18th day of January, 1844, wherein they solicit a grant of a certain tract of land described as a "sobrante" of three adjacent ranchos. (2) Connected with the petition is a marginal decree, of the same date, directing the secretary to report upon the subject, "having first taken such steps as he may deem necessary." (3) Certificate of the secretary, also of the same date, that the governor directs the first alcalde of San José to summon the occupants of the adjacent ranchos, and hear their allegations, and make report of his doings. (4) Report of the alcalde, under date 1st of February of the same year, to the effect that the rancheros mentioned and the petitioners had been confronted, and that the former made no objection to the application; but he also reported that it had come to his knowledge that one Francisco Soto, six or seven years before, had claimed the same tract. (5) Ten days after that document was filed, the secretary reported to the governor that it would seem, according to that report, that there was no obstacle to the making of the grant. (6) Subsequently, however, the governor entered a decree directing the judge of the proper district to take measurements of the land in the presence of the adjacent proprietors, and that he "certify the result, so that it may be granted to the petitioners." (7) Second petition of the claimants, under date of the 21st of March, 1844, in which they stated that the judge of San José had never been able to execute the order of survey, on account of the absence or engagements of the adjacent proprietors, and asked that the governor would grant the tract to them provisionally, or in such manner as he should deem fit. (8) The record contains no order of reference of the second petition, but the secretary, two days after its date, made a report to the governor, expressing the opinion that the former order of survey ought first to be carried into effect; and, when the survey should be made, the suggestion was that the prior claimant and the petitioners should be confronted, in order that the governor might be able to "determine what is best." (9) Final decree of the governor is in the words following, to wit: "Let everything be done agreeably to the foregoing report,"—which concludes the record of the Mexican documents offered in evidence.

The supreme court held, in the case of Romero v. U. S., 1 Wall. 740, that those documents afforded no evidence that a grant or concession of any kind was ever issued by the Mexican government to the Romeros, but that, on the contrary, "the documents, as a whole, fully show that up to the date of the last-named decree no such grant had ever been issued. Survey of the tract," continued the court, "was first to be made, and the parties supposed to be opposed in interest were then to be summoned and heard, as pre-

liminary conditions to the hearing of the application. Record furnishes no evidence of a reliable character that either of those conditions was ever fulfilled. Evidence to show that the survey was made is entirely wanting. First-named claimant was summoned as a witness, and he testified that the pretensions of the prior claimants were overruled and abandoned; but the explanations given by him, in view of the documents in the case, are not satisfactory." The court found the parol evidence tending to show the issuance and existence of the claimed grant to be insufficient to overcome the conclusive nature of the documentary evidence, and, accordingly, affirmed the decree of the district court; thus, finally, in December, 1863, rejecting the claim of the Romeros. Prior to this final rejection, however, Inocencio Romero, to wit, on December 26, 1853, according to the facts as alleged before the officers of the land department, and conclusively passed upon by them, sold and conveyed, for value, to Domingo Pujol, and Francisco Sanjurjo, that portion of the lands embraced within the Mexican claim which was within the inclosure mentioned, and which was set apart to him in the partition of 1846 or 1847, and which, according to the allegations there made and passed upon, he had ever since used and cultivated; and, through subsequent mesne conveyances, the same right and interest passed to S. P. Millett; August 8, 1859, who then entered into the possession of the lands in question, used, improved, and cultivated the same, and continued in the actual possession thereof, according to the lines of the original purchase, at the time of and after the passage of the act of congress of July 23, 1866. At that date (July 23, 1866), the lands in question being public lands of the United States, not reserved for any purpose whatever, and to which no adverse claim of any nature existed, and Millett being a grantee, for value, under Inocencio Romero, and having purchased in good faith while the claim to the land under the alleged Mexican grant was being prosecuted before the tribunals authorized by law to settle such claims, and before its rejection, there can be no doubt, we think, that Millett was entitled to purchase the lands under the provisions of the seventh section of the act of July 23, 1866. It was for the very purpose of meeting and obviating the hardships resulting from the rejection, in numerous instances, of claims to lands under supposed or defective Mexican grants, that this act was passed. It was strictly remedial in its nature, and, as such, should receive a broad and liberal construction, to the end that its purposes be accomplished, and not defeated. Indeed, it is not unusual, in construing a remedial statute, to extend the enacting words beyond their natural import and effect, in order "to include cases within the same mischief." Dean of York v. Middleburgh, 2 Younge & J. 196. See, also, Potter's Dwar. St. p. 231; U. S. v. Wittberger, 5 Wheat. 76; American Fur Co. v. U. S., 2 Pet. 358; U. S. v. Hodson, 10 Wall. 395; White v. The Mary Ann, 6 Cal. 462; Jackson v. Warren, 32 Ill. 321.

But, certainly, as respects Millett, there is no need to extend the natural meaning of the words of the act of 1866 to bring him within the beneficent provisions of its seventh section. The fact

that it was determined by all of the United States tribunals charged with the duty of deciding the question that there never was, in fact, any grant or concession by the Mexican government to the Romeros, and that their claim to lands under the alleged grant was rejected, does not render the act inapplicable to Millett. When he purchased, in good faith and for value, from an intermediate grantee of Inocencio Romero, the claim was being earnestly pressed before the courts of the United States that there was such a grant, and their records show that there was parol evidence of its actual issuance and existence. Besides, the issuance of a grant was not always essential to the confirmation of such a claim. In the case of U. S. v. Alviso, 23 How. 318, the supreme court refused to disturb, and affirmed, the decree of the court below confirming a claim to land where no grant was in fact issued by the Mexican authorities, but where, pending the proceedings by those authorities upon the petition for the grant, the petitioner was given permission to occupy the land, then vacant, which he did for 14 years, during which time he was recognized as its owner, and possessed the requisite qualifications, and no suspicion existed unfavorable to the bona fides of his petition or the continuity of his possession and claim, and where there was no adverse claim. Surely, one who purchased, in good faith and for value, the land under such a claim as that of the Romeros, before its final rejection, is as much entitled to the preferred right conferred by the seventh section of the act of July 23, 1866, as is one who makes a similar purchase under a supposed grant afterwards adjudged to be forged or otherwise fraudulent. It was, as has been said, to meet and obviate the hardships growing out of all such and similar cases, that the act in question was passed.

But before the right conferred by the seventh section of the act of July 23, 1866, upon Millett, could be exercised, a survey of the lands and the filing of the plats thereof by the government of the United States were necessary. It appears from the decision of the secretary of the interior (8 Land Dec. Dep. Int. 144) that the township plats of such survey, embracing the lands in question, were filed in the local land office July 30, 1878, for township 1 S., and on October 5, 1878, for township 1 N. These plats were withdrawn October 24, 1878, restored February 24, 1882, suspended March 9, 1882, and the suspension removed April 16, 1883. On August 10, 1883, Naphtaly filed his application to purchase. Had the preferred right of purchase conferred by the seventh section of the act of July 23, 1866, on Millett, remained in him, certainly he could not have exercised it earlier than July 30, 1878, when the first of the township plats was filed in the local land office. Suppose, while that right thus existed in him, without the power to exercise it, because of the failure of the government to survey the land, Millett had died; would not the right have passed to his heirs? Undoubtedly so. It is equally clear, we think, that it was assignable. It is elementary that every right, title, interest, or claim in lands is assignable or descends to heirs, unless such transfer or descent is prohibited by statute. Co. Litt. 46b; Washb. Real

Prop. c. 1, § 20; Myers v. Croft. 13 Wall. 291; Davenport v. Lamb, Id. 418. The act of July 23, 1866, places no such restriction, limitation, or condition upon the right therein created. The preferred right of purchase thereby given is analogous to the pre-emption laws of April 12, 1814 (3 Stat. 122), and June 19, 1834 (4 Stat. 678), which right the supreme court held, in Thredgill v. Pintard, 12 How. 24, was assignable. The only difference between the two is that the preferred right of purchase given by the act of 1866 is based on conditions precedent, while the right of pre-emption given by the acts of 1814 and 1834 was based on conditions subsequent,—a difference wholly unimportant in determining the nature and extent of the right. In Lamb v. Davenport, 18 Wall. 307, the supreme court held that, unless forbidden by some positive law, contracts made by actual settlers on the public lands concerning their possessory rights, and concerning the title to be acquired in future from the United States, are valid as between the parties to the contract, though there be at the time no act of congress by which the title may be acquired, and though the government is under no obligation to either of the parties in regard to the title; and, accordingly, that the right of entry conferred by the Oregon donation act of September 27, 1850 (9 Stat. 496), inured to the benefit of grantees under the prior possessory right. Such authoritative recognition of the assignability, in the absence of statutory prohibition, of such possessory rights and right of pre-emption, is, in our judgment, conclusive in favor of the assignability of the preferred right of purchase given by the seventh section of the act of July 23, 1866. This view was adopted by the secretary of the interior in 1873, and has ever since prevailed in the land department. Wilson v. Railroad Co., Copp, Pub. Land Laws, 471; Owen v. Stevens, 3 Land Dec. Dep. Int. 401; Welch v. Molino, 7 Land Dec. Dep. Int. 210.

It is true, as urged on the part of the defendants, that Naphtaly purchased with notice of the final rejection of the Mexican claim; but it is equally true that he purchased with knowledge of the act of July 23, 1866, and with a knowledge that, under that act, there existed in his grantor a preferred right of purchase, which was assignable, and which he had the legal right to purchase, and which he did purchase in good faith and for value. In respect to all matters of fact, such as the possession, use, and improvement of the lands, the respective purchases, how and for what made, the patent, as has been said, is conclusive; and holding, as we do, that the preferred right of purchase is assignable, it results that the proffered evidence, had it been admitted, could not have affected the validity of the plaintiff's patents.

We are of opinion, further, that the court below did not err in sustaining the objections to the evidence offered by the defendants. Admitting, as they did, that the lands in question were public lands of the United States, subject to sale under its laws, for which the plaintiff brought into court patents of the United States regular in form, those instruments are absolutely conclusive against any collateral attack by mere intruders upon the lands covered by

them, such as the defendants confess themselves to be. Smelting Co. v. Kemp, 104 U. S. 636; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389; Barden v. Railroad Co., 154 U. S. 328, 14 Sup. Ct. 1030; Buena Vista Petroleum Co. v. Tulare Oil & Min. Co., 67 Fed. 226; U. S. v. Winona & St. P. R. Co., 15 C. C. A. 96, 67 Fed. 948. Judgment affirmed.