STATE EX REL. GALEN, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 2,909.)

(Submitted September 19, 1910.   Decided October 19, 1910.)

[112 Pac. 706.]

*Eminent Domain—Public School Lands—Manner of Disposal—
Electric Power Dams—State—Consent to be Sued—Statutes.*

Eminent Domain—Electric Power Dams—Public Lands—State—Consent to
be Sued—Statutes.
 1.   *Held,* that by subdivision 2 of section 7333, Revised Codes, provid-
ing that private property which may be taken under the eminent domain
statute includes, among others, lands belonging to the state, the com-
monwealth has expressly given its consent to be sued in an action look-
ing to the acquisition of such lands.

Same—State School Lands—Manner of Disposal.
 2.   Title in fee to lands granted to the state by section 10 of the Ena-
bling Act for common school purposes, cannot be acquired by condemna-
tion proceedings; such lands must be disposed of at public sale.

ORIGINAL application by the attorney general, on behalf of
the state, for a writ of prohibition commanding the district
court for Sanders county and the Honorable Henry L. Myers,
a judge thereof, to desist from exercising further jurisdiction
in an action entitled *Steele et al.* v. *State of Montana et al.,*
looking to the condemnation of school lands for electric power
purposes.   Writ granted.

*Mr. Albert J. Galen,* Attorney General, in behalf of the State,
submitted a brief and argued the cause orally.

Authority to condemn property for a public use must clearly
be expressed in the law before such right will be allowed.
(*Seattle and Montana Ry. Co.* v. *State,* 7 Wash. 150, 38 Am. St.
Rep. 866, 34 Pac. 551, 22 L. R. A. 217; *State* v. *Boone County,*
78 Neb. 271, 110 N. W. 629, 15 Ann. Cas. 487; *State* v. *Supreme
Court,* 36 Wash. 381, 78 Pac. 1011; *People* v. *Chicago Drainage
Co.,* 210 Ill. 171, 71 N. E. 334; *State Land Commrs.* v. *Illinois
School District,* 43 Ill. 303.)   It is true that subdivision 2 of
section 7333, Revised Codes, provides with respect to the char-

acter of private property which may be taken by condemnation proceedings that, "lands belonging to the state  \*  \*  \*  not appropriated to some public use," may be condemned for a public use, and by this section it is urged that the state has consented to be sued in such a proceeding.  An examination of our Constitution and statutes does not disclose any other provisions whatsoever authorizing the institution of such a suit against the state, and after a careful examination of the authorities we have only been able to find two cases in which a similar statutory provision has been by the courts considered with respect to the sufficiency of such language alone to confer authority to maintain such an action.  One of these is *California etc. Ry. Co.* v. *State,* 1 Cal. App. 142, 81 Pac. 971, and the other is *Hollister* v. *State,* 9 Idaho, 8, 71 Pac. 541.  The former cannot be considered authority in support of respondent's contention herein, for the reason that in that case the court's jurisdiction seems to have been based upon the existence of a statute in California, section 1240 of Code of Civil Procedure, reading in part as follows: "Proceedings to condemn lands belonging to this state are hereby authorized, and must be maintained and conducted in the same manner as other condemnation proceedings provided for in this title."  In Idaho they had a statute identical with our subdivision 2 of section 7333, which was by the court considered as to its effect in warranting the institution of such proceedings, and with respect thereto the court said: "This statute alone, however, would not authorize this action."  And the right to institute condemnation proceedings against lands belonging to the state was by the court recognized only because of the existence of an express statute (Laws of 1899, p. 381), clearly authorizing the institution of such proceedings as against state lands.  We have no such statute in this state; therefore subdivision 2 of section 7333, *supra,* standing alone, cannot be considered sufficient to authorize such an action.

State school lands can only be disposed of in accordance with the terms of the grant, Constitution, and general laws consistent with both.  The grant of sections 16 and 36 in every township

made by section 10 of the Enabling Act to the state of Montana for common school purposes, upon its admission to the Union, constitutes a gift in trust to be held, administered and disposed of only in accordance with the terms and conditions of the grant. (*State* v. *Cook,* 17 Mont. 529, 43 Pac. 928; *Roach* v. *Gooding,* 11 Idaho, 244, 81 Pac. 645; *State* v. *McMillan,* 12 N. D. 280, 96 N. W. 310; *State* v. *Maynard,* 31 Wash. 132, 71 Pac. 775; also, *State* v. *Toole,* 26 Mont. 22, 91 Am. St. Rep. 386, 66 Pac. 496, 55 L. R. A. 644; *State* v. *Barrett,* 25 Mont. 112, 63 Pac. 1030; *State* v. *Collins,* 21 Mont. 448, 53 Pac. 1114.)   Entirely consistent with the terms and conditions of the provisions of the grant and of its acceptance by the state, and in accord with constitutional direction, Chapter 147, Laws of 1909, is now in force and effect, and provides the only method by which title may be obtained to lands granted to the state of Montana for educational purposes: A person seeking to obtain title in fee to such lands, or attempting to obtain rights of way or easement on or over same, must deal with the State Board of Land Commissioners, and the land must be disposed of only in accordance with the directions contained in said law.

If for any reason subdivision 2 of section 7333 of the Revised Codes should be considered a sufficient consent on the part of the state to the institution of condemnation proceedings against such state lands, surely its provisions are superseded by the terms and provisions of Chapter 147 in Laws of 1909, and such Chapter should be considered as a repeal of said section by implication.   By this Act the Board of Land Commissioners are authorized and empowered to sell for a valuable consideration an easement or right of way for such purposes over or upon such lands, but the fee title to the same remains in the state. The board is given authority to grant rights of way on and over state lands, "upon such terms as may be agreed upon," and the only appeal from its judgment and decision is to the legislative assembly.   (*Seattle & Mont. Ry. Co.* v. *State,* 7 Wash. 150, 38 Am. St. Rep. 866, 34 Pac. 551, 22 L. R. A. 217.)   The disposition of the fee of such lands being vested wholly and

exclusively in said board and the obtaining of title in fee by jurisdictional order or decision being impossible under the terms and conditions of the grant and the provisions of the state Constitution, therefore, it necessarily follows that the district court is wholly without jurisdiction.

Lands constituting the bed of a navigable stream cannot be disposed of without express statutory authority. They are held in trust by the state for the benefit of the people. (See *Rossmiller* v. *State,* 114 Wis. 169, 91 Am. St. Rep. 910, 89 N. W. 839, 58 L. R. A. 93; *Attorney General* v. *Smith,* 109 Wis. 532, 85 N. W. 512; *Illinois Central Ry. Co.* v. *Illinois,* 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; Lewis on Eminent Domain, 3d ed., sec. 93; *State* v. *Longfellow,* 169 Mo. 109, 69 S. W. 374; *Shepherd* v. *Coeur d'Alene,* 16 Idaho, 293, 101 Pac. 591; *Johnson* v. *Johnson,* 14 Idaho, 561, 95 Pac. 499, 24 L. R. A., n. s., 1240; *San Francisco Savings Union* v. *R. G. R. Petroleum & Mining Co.,* 144 Cal. 134, 103 Am. St. Rep. 72, 77 Pac. 823, 66 L. R. A. 242, 1 Ann. Cas. 182.) The shores of the navigable waters and the soil under them were not granted by the Constitution of the United States, but were reserved to the states respectively; and new states have the same rights, sovereignty and jurisdiction over this subject as the original states. (*Pollard* v. *Hagan,* 3 How. 212, 11 L. Ed. 565; *Martin* v. *Waddell,* 16 Pet. 367, 10 L. Ed. 997; *Goodtitle* v. *Kibbe,* 9 How. 471, 13 L. Ed. 220; *Barney* v. *Keokuk,* 94 U. S. 324, 24 L. Ed. 229; *Packer* v. *Bird,* 137 U. S. 661, 11 Sup. Ct. 210, 34 L. Ed. 819; *Hardin* v. *Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; *Kaukauna Water Power Co.* v. *Green Bay Canal Co.,* 142 U. S. 254, 12 Sup. Ct. 173, 35 L. Ed. 1004; *Shively* v. *Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331; *Water Power Co.* v. *Commissioners,* 168 U. S. 349, 18 Sup. Ct. 157, 42 L. Ed. 497; *United States* v. *Chandler Dunbar Water Power Co.,* 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881; *Kansas* v. *Colorado,* 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956.) It surely follows that the state cannot enact an eminent domain law whereby a person or corporation through condemnation proceedings is permitted to secure title to such

lands.   The state cannot do indirectly that which it cannot do directly.   (*Ligare* v. *City of Chicago,* 139 Ill. 46, 32 Am. St. Rep. 179, 28 N. E. 934.)

In behalf of Respondents there was a brief by *Messrs. Walsh & Nolan,* and oral argument by *Mr. T. J. Walsh.*

Subdivision 2 of section 7333, Revised Codes, is entirely without meaning unless it be considered as authorizing the institution of suits against the state to condemn lands owned by it for public purposes.   When the legislature declared that the lands of the state not appropriated to public use might be condemned for public purposes, it of necessity declared that suit to condemn such lands might be instituted and maintained.   Direct authority for this conclusion will be found in the case of *California Ry. Co.* v. *State,* 1 Cal. App. 142, 81 Pac. 971.

It is contended, however, that by virtue of the provisions of the Enabling Act and of the Constitution, and possibly the statute passed pursuant thereto in the year 1909, the proceedings cannot be maintained.   A careful examination of these various provisions of the law will disclose that they concern themselves exclusively with lands granted to the state by the federal government for educational or other public purposes; that is to say, they concern themselves with lands which were once the lands of the general government and which it granted to the state.   The land between high and low water mark of the navigable streams of a state never did belong to the government, and never was it granted to the states as shown by numerous decisions.   The general government held the title to these lands prior to the admission of the state into the Union, in trust for the state, and when the state was admitted, the legal title to these lands passed to it.   Accordingly, whatever may be said concerning the want of power in the legislature to authorize the taking of lands granted to the state, it can have no application to lands embraced in these proceedings except as to that portion of section 36 which is sought to be condemned. But as to that the contention cannot be sustained.   The same

contention was made in the case of *Hollister* v. *State*, 9 Idaho, 8, 71 Pac. 541. Section 11 of the Enabling Act and the provisions of the Constitution referred to must be construed as though they contained a provision to the effect that the restriction placed upon the disposition of the lands should not be construed as to limit the power of the state in respect to the exercise of the right of eminent domain. Indeed, so far as the Enabling Act is concerned, it would doubtless be beyond the power of Congress to tie the hands of the state in that regard. If it were by any provision limited in its right, the state would not have been admitted on an equality with the other states.

The right to take lands by proceedings in eminent domain is so characteristically inherent in sovereignty that lands of the state may be taken for public purposes by the United States, and lands of the United States similarly by the state. (10 Am. & Eng. Ency. of Law, 1097, 1098, and notes.)

It is argued that if authority was or could be granted to the courts to condemn the lands of the state for public uses, by virtue of the provisions of subdivision 2 of section 7333, that power was taken away by virtue of the provisions of section 33 of the Act of 1909. But this contention cannot be sustained. The two sections may well stand together. There is no inconsistency between them. Section 33 above contemplates the acquisition of the right by negotiation between the person or corporation seeking it, and the agents of the state. Proceedings in eminent domain are adversary. They are prosecuted and become necessary only when for some reason negotiations are fruitless. Repeals by implication are not favored. In order to accomplish the repeal of an Act by implication, the later Act must be necessarily inconsistent with the former, or the new Act must purport to cover the entire scope of legislation upon the subject with which the earlier Act deals. The Act of 1909 is concerned with the disposition of the state lands as its subject. The statute to which appeal is made for justification of the proceedings sought to be enjoined is a part of the provisions of the Code of Civil Procedure, dealing with the general subject of eminent domain.

It is said that the state has no power to dispose of lands constituting the bed and shore of navigable streams. That it has no unlimited power of disposition may be conceded; but that it has the right to dispose of these lands in all cases where such disposition will not interfere with the public uses for which they are held, has been repeatedly asserted by the supreme court of the United States. (See *Illinois Central* v. *Illinois,* 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 118, and particularly the cases referred to in the dissenting opinion; *Stockton* v. *Baltimore etc. R. R. Co.,* 32 Fed. 17.) See likewise, with reference to the right of the state to dispose of these lands: *Mann* v. *Tacoma Land Co.,* 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714. Lands of this character belong to the state and are held by it for all municipal purposes,—that is to say, all municipal purposes for which they can be devoted. (*Illinois Central* v. *Illinois, supra; Pollard* v. *Hagan,* 3 How. 212, 11 L. Ed. 565.)

MR. JUSTICE SMITH delivered the opinion of the court.

In April, 1910, an action was begun in the district court of Sanders county by one Steele and others against the state of Montana and others, for the purpose of condemning certain lands belonging to the defendants, by the exercise of the power of eminent domain. The state interposed a demurrer to the complaint, on the grounds that the court had no jurisdiction of the person of that defendant or of the subject of the action; and that the complaint did not state facts sufficient to constitute a cause of action. The district court overruled the demurrer, whereupon the state, through the attorney general, sued out of this court an alternative writ of prohibition commanding the district court and the Honorable Henry L. Myers, one of the judges thereof, to desist from exercising jurisdiction in said action until the further order of this court, and to show cause, at a day named therein, why a mandatory and permanent writ of prohibition should not issue. The respondents appeared and answered, and the cause has been argued.

The complaint in the case of Steele and others against the state of Montana and others, alleges that the plaintiffs are about

to construct a dam across the Clark's Fork of the Columbia river, a navigable stream, for the purpose of generating electricity for general sale; that the state is the owner of the bed of the stream and also of the land between low and high water marks; also of certain lots in section 36, township 22 north of range 30 west, in the county of Sanders, situated on both sides of said river, upon which it is proposed to place the abutments of the dam; that plaintiffs also intend to flood portions of section 36; that the dam will rest upon the bed of the stream.   The prayer of the complaint is that the use to which plaintiffs seek to devote the land be declared to be a public use; that they be adjudged to be entitled to perpetually use the same for that purpose; and that commissioners be appointed to ascertain and determine the amount to be paid by them to the defendants, as damages.

1. Plaintiffs in the condemnation proceedings claim the right to take the lands in question, by virtue of the provisions of section 7333, Revised Codes, subdivision 2 of which reads as follows: "The private property which may be taken under this title [Title VII, Eminent Domain], includes  *  *  *  2. Lands belonging to the state, or to any county, city or town, not appropriated to some public use." It is contended by the attorney general that this section of the Codes does not give consent for the state to be sued and does not authorize a suit to condemn lands owned by the state.   The supreme court of Idaho, in *Hollister* v. *State,* 9 Idaho, 8, 71 Pac. 541, speaking of a similar statute, said: "This statute alone would not authorize this action." It then decided that authority is granted by another statute of Idaho, so that it will be seen that the remark above quoted was an unnecessary one.   Although the opinion is not very clear upon the point, the California court of appeals, in *California & N. Ry. Co.* v. *State,* 41 Cal. App. 142, 81 Pac. 971, appears to have held that a statute similar to ours authorizes a suit against the state.   We are of opinion that the supreme court of Idaho was wrong in saying that such a statute does not authorize the action.   The language appears to us to be clear, and if it means anything at all, it means that lands belonging to the state may be taken by

the exercise of the power of eminent domain, and that the state may properly be made a party to the action. In other words, the state has expressly consented to be sued under such circumstances.

2. It will be observed that a part of the land sought to be taken is in section 36, commonly known as a school section, and the attorney general argues that on that account it cannot be taken in condemnation proceedings, for the reason that "state school lands can only be disposed of in accordance with the terms of the grant to the state, the Constitution, and general laws consistent with both."

Section 10 of the Enabling Act provides in part: "Upon the admission of each of said states into the Union, sections numbered 16 and 36 in every township * * * are hereby granted to said states. for the support of common schools. * * * *" Section 11 provides: "That all lands herein granted for educational purposes shall be disposed of only at public sale, and at a price not less than ten dollars per acre, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislatures shall prescribe, be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company; and such lands shall not be subject to pre-emption, homestead entry or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

Section 7 of Ordinance No. 1, appended to the state Constitution, reads thus: "The state hereby accepts the several grants of land from the United States to the state of Montana mentioned in an Act of Congress (the Enabling Act) upon the terms and conditions therein provided."

Section 1 of Article XVII of the state Constitution reads as follows: "All lands of the state that have been, or that may hereafter be granted to the state by Congress, and all lands acquired by gift or grant or devise, from any person or corpora-

tion, shall be public lands of the state, and shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised; and none of such land, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of, except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States. * * * "

It has been repeatedly held that the fund created from the sale of lands granted to the state by the federal Congress for a particular purpose is a trust fund "established by law in pursuance of the Act of Congress." (See *State ex rel. Bickford* v. *Cook*, 17 Mont. 529, 43 Pac. 928; *State ex rel. Dildine* v. *Collins*, 21 Mont. 448, 53 Pac. 1114; *State ex rel. Koch* v. *Barrett*, 26 Mont. 62, 66 Pac. 504.) Section 7332, Revised Codes, provides, in part: "The following is a classification of the estate and rights in lands subject to be taken for public use: 1. A fee simple, when taken for public buildings or grounds or for permanent buildings, for reservoirs and dams, and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine." It seems clear from the allegations of the complaint that the plaintiffs in the Steele case seek to take a *fee simple* title to the lands of the state. We hold that the title in fee to state common school lands, granted by section 10 of the Enabling Act, cannot be acquired in condemnation proceedings. In the case of *Hollister* v. *State, supra,* the supreme court of Idaho took an opposite view. Mr. Justice Ailshie, writing the opinion, said: "Again it is urged by appellant that the court had no jurisdiction of the subject matter of the action; that the Act of Congress known as the 'Idaho Ad-

mission Act,' granting sections 16 and 36 in each township to the state for school purposes, and providing that such lands 'shall be disposed of only at public sale, the proceeds to constitute a permanent school fund,' prohibited the taking of this property under the claim of eminent domain. Under this Act it is claimed that the state cannot authorize any disposition of such lands other than at public sale, and that, therefore, the court had no jurisdiction of an action to condemn any such lands to a public use. * * * When Idaho became a state, it at once necessarily assumed the power of eminent domain, one of the inalienable rights of sovereignty; and that right, we take it, may be exercised over all property within its jurisdiction. * * * But even if Congress had the authority, in granting these lands to the state, to restrict and prohibit the state in the exercise of the power of eminent domain, we do not think it was intended or attempted in the Admission Act. It was evidently the purpose of Congress in granting sections 16 and 36 in each township to the state for school purposes to provide that the revenue and income from all such lands should go to the school fund, and that when sold it should be at the highest market price. We cannot believe that Congress meant to admit into the Union a new state, and by that very act throttle the purposes and objects of statehood by placing a prohibition on its internal improvements. To prohibit the state the right of eminent domain over all the school lands granted would lock the wheels of progress, drive capital from our borders, and in many instances necessitate settlers who have taken homes in the arid portions of the state seeking a livelihood elsewhere.'' We are unable to agree with the reasoning of the learned judge. It seems to us that the decision on this point simply amounts to a declaration that the Congress of the United States did not mean what it said when it commanded that sections 16 and 36 in every township should be sold at public sale. Neither can we agree that there is any question of the right of the United States to dictate and restrict the manner in which the state shall dispose of the lands. They all belonged to the United States; a grant to the state, as trustee for its common

schools, was in contemplation, and we know of no authority which has the power to question the right of the grantor to make such terms as it saw fit.  Neither is there any authority in the state to change the terms of the grant without the consent of the Congress of the United States.  The framers of the state Constitution did not attempt to do so.  They expressly agreed, for the state, not to dispose of any lands granted by the United States in any case in which the manner of disposal was prescribed in the grant, except in the manner prescribed, without the consent of the United States.  It is expressly declared in the Enabling Act that the territory of Montana may become the state of Montana "as hereinafter provided"; that "sections 16 and 36 are hereby granted for the support of common schools"; that "all lands herein granted for educational purposes shall be disposed of *only at public sale.*"  The Congress is presumed to have had good and sufficient reason for thus restricting the right of alienation, and the state solemnly accepted the conditions. If those restrictive words can be disregarded in favor of the right to exercise eminent domain, then the condition of the grant is not general in its application, as its phraseology would appear to indicate, exceptions may be read into it, and the entering wedge be inserted by which the safeguard may be entirely broken down and removed.

The supreme court of Washington, in *State ex rel. Heuston* v. *Maynard,* 31 Wash. 132, 71 Pac. 775, said: "The manner of the disposition of the sale of such lands  *  *  *  is subject to the limitations contained in section 11 of the Act."  The supreme court of North Dakota, in *State ex rel. Board* v. *McMillan,* 12 N. D. 280, 96 N. W. 310, said: "Perhaps it is not necessary to state that by the acceptance of the grant for educational purposes * * * a trust was created, the character of which was fixed by the terms of the grant.  By the mere acceptance of the grant the honor of the state was pledged to the observance of the obligation of the trust.  *  *  *  "

We cannot think that the mere fact that certain individuals may not condemn a portion of a school section which happens to

be particularly advantageous as a dam-site for generating electricity will have the effect of placing a prohibition upon internal improvements, or lock the wheels of progress, or necessitate the removal of settlers. Provision is made for the disposal of these lands at public sale, and in our judgment this provision will eventually be invoked not only to enhance and enlarge the internal improvements of the state, but to put money into the common school fund at the same time. Not such a sum as three commissioners or a petit jury in a county may think adequate, but such an amount as shall be realized from competitive bidding in open and unrestricted competition. We think the Congress of the United States and the framers of our Constitution so intended, and we so hold.

While it is true that the power of eminent domain is one of the inherent and inalienable rights of sovereignty, and may ordinarily be exercised over all property within the jurisdiction of the state, it is not to be supposed that this right is so limitless as to enable the state to violate its contract with the federal government.

Other questions are raised and argued in the briefs of counsel, but it is thought that the foregoing disposition of the main question makes the solution of others unnecessary. If we are in error, the fact may be brought to our attention.

It is ordered that a writ issue prohibiting the respondents from further proceeding in the case of *Steele et al.* v. *The State of Montana et al.,* in so far as such proceedings will in any way affect those portions of section 36, township 22 north of range 30 west, county of Sanders and state of Montana, mentioned and described in the plaintiffs' complaint. Costs to the relator.

*Writ granted.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.

Rehearing denied, December 12, 1910.