BUENA VISTA PETROLEUM CO. v. TULARE OIL & MINING CO. et al.

(Circuit Court, S. D. California. April 8, 1895.)

No. 559.

PUBLIC LANDS—LISTING TO STATE—ACT CONG. JULY 2, 1862.

The act of the secretary of the interior in certifying and listing to a state the lands selected by it under Act Cong. July 2, 1862, donating lands in aid of colleges of agricultural and mechanic arts, which act excludes from the grant all mineral lands, is a conclusive determination that the lands so listed and certified were such as to be within the terms of the grant, and such determination cannot be questioned collaterally in a suit involving title to the lands.

This was a suit by the Buena Vista Petroleum Company against the Tulare Oil & Mining Company and others to quiet complainant's title to certain lands. The complainant excepted to the answer of some of the defendants.

William Grant, for complainant.
Samuel Minor and Houghton, Silent & Campbell, for defendants.

ROSS, District Judge. This is a suit in equity brought to quiet the complainant's alleged title to certain subdivisions of what were public lands of the United States, as against the adverse claims of the defendants. In the bill is set out a deraignment of the title claimed by the complainant. It is therein averred that by the act of July 2, 1862, entitled "An act donating public lands to the several states and territories which may provide colleges for the benefit of agricultural and mechanic arts" (12 Stat. 503), congress granted to the state of California 150,000 acres of the public lands of the United States, and that under and by virtue of that act of congress, and pursuant to state legislation enacted to take the benefit of the grant, the agent of the state of Cali-

fornia selected, with the approval of the officers of the land department of the United States, the lands in controversy, as a part of the 150,000 acres so granted to California by the general government, and that the lands so selected were certified and listed to the state on the 3d day of January, 1878, by the secretary of the interior in part satisfaction of the congressional grant, and that thereafter, and on the 25th day of September, 1886, all of the state title thereto was conveyed by its patent to the complainant, and ever since has been vested in it.    The bill alleges that at various named dates thereafter the respective individual defendants entered upon the lands in controversy, and located thereon certain placer mining claims, marking the boundaries thereof upon the ground, so that they could be readily traced, and posted notices thereon, and filed the same for record, in accordance with the mining laws of the United States.    The bill avers that the defendants, and each of them, claim that, at the time the lands in controversy were listed and certified to the state of California in part satisfaction of the congressional grant, all of the lands were, and ever since have been, mineral in character, and subject to be located and patented pursuant to the mining laws of the United States, and, therefore, that all of the steps taken and acts done in respect to such lands under and by virtue of the congressional grant to the state were void, and that the individual defendants, and each of them, claim to have conformed to the provisions of the statutes of the United States in respect to the location of mining ground, and that they will be entitled to receive patents from the government for their respective mining claims.    The bill further alleges that the lands so listed and certified to the state, and patented to complainant by the state, are, and have been at all times, agricultural lands, and subject to be certified, listed, and patented as such in part satisfaction of the congressional grant to California, and never have been at any time mineral lands, or subject to be located or patented as such.

In the answer of the individual defendants, to which exceptions have been filed by the complainant, and which are now for disposition, no question is made in respect to the regularity of the proceedings had under the state law subsequent to the listing and certification of the lands in controversy to the state; but the answer puts in issue the averments of the bill in respect to the character of the lands in controversy, and affirmatively alleges that they are, and were at all times, mineral lands, and never were agricultural in character, and therefore never came within the terms of the grant by congress to California, but were in terms excluded therefrom, and were subject to location under the laws of the United States in relation to mineral lands, with which laws the answer sets up in detail a compliance on the part of the individual defendants regarding their respective locations.

The act of congress making the grant to the state expressly excluded therefrom all mineral lands; and both sides to the controversy submit, as the controlling, and indeed the only, question for decision, whether the listing and certification of the lands in ques-

tion to the state is a conclusive determination that the character of the lands was such as brought them within the terms of the grant, or whether the defendants are, in this suit, entitled to show that the lands in controversy were, at the time they were so listed and certified, and since have been, mineral in character, and therefore excluded from the grant to the state.

The act of congress making the grant does not provide for the issuance of a patent to the state for the lands granted thereby, nor is there any other act, to which attention is called, or which I have been able to find, providing for the issuance to the state of a patent therefor. But by an act of congress of August 3, 1854 (10 Stat. 346, and embodied in the Revised Statutes as section 2449), it is declared:

"That in all cases where lands have been, or shall hereafter be, granted by any law of congress to any one of the several states and territories; and where said law does not convey the fee-simple title of such lands, or require patents to be issued therefor; the lists of such lands which have been, or may hereafter be certified by the commissioner of the general land-office, under the seal of said office, either as originals, or copies of the originals or records, shall be regarded as conveying the fee simple of all the lands embraced in such lists that are of the character contemplated by such act of congress, and intended to be granted thereby; but where lands embraced in such lists are not of the character embraced by such acts of congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim, or interest shall be conveyed thereby."

The supreme court has decided in a number of cases that a certified list, issued under and pursuant to this statute, is of the same effect as a patent. Frasher v. O'Connor, 115 U. S. 102, 5 Sup. Ct. 1141; Mower v. Fletcher, 116 U. S. 380, 6 Sup. Ct. 409; McCreery v. Haskell, 119 U. S. 327, 7 Sup. Ct. 176; Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985; Chandler v. Mining Co., 149 U. S. 79, 13 Sup. Ct. 798. It is said for the defendants that in none of those cases was a question made as to the character of the land. In this counsel are mistaken, and notably so in respect to the case of Chandler v. Mining Co. In that case both parties claimed the particular 40-acre tract of land in controversy under a conveyance from the state of Michigan; the plaintiff contending, and offering to prove by parol, that it was a part of the swamp lands granted to the state of Michigan by the act of congress approved September 28, 1850 (9 Stat. 519), and the defendant claiming it under the grant to the state by congress approved August 26, 1852 (10 Stat. 35), by which there was granted to Michigan, for the purpose of building a ship canal around the falls of St. Mary's, 750,000 acres of public land. The tract in controversy was selected and certified to the state in part satisfaction of the canal grant, and was never selected by the state, or listed to it, as swamp land, although a portion of the land in the vicinity thereof, and in the same township, was included in the lists of such lands which were selected and approved by the secretary of the interior. The supreme court held that there had been such affirmative action on the part of the department of the interior as constituted a conclusive determination in respect to the character of the land, and that parol evidence on the part of the plaintiff to show that the particular tract was swamp in char-

acter, and therefore embraced by the swamp-land grant to the state was inadmissible. This ruling clearly controls a case like the present, where the lands in controversy were selected by the state as being within the grant to it, the selection approved by the secretary of the interior, and the certified list issued to the state pursuant thereto. And, appropriate to the question, is also the following from the opinion of the same court in the recent case of Barden v. Railroad Co., 154 U. S. 328, 14 Sup. Ct. 1030:

"In Steel v. Smelting Co., 106 U. S. 447, 450, 1 Sup. Ct. 389, the language of the court was that: 'The land department, as we have repeatedly said, was established to supervise various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualification of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation.' In Heath v. Wallace, 138 U. S. 573, 585, 11 Sup. Ct. 380, it was held that 'the question whether or not lands returned as "subject to periodical overflow" are "swamp and overflowed lands" is a question of fact, properly determinable by the land department.' And Mr. Justice Lamar added, 'It is settled by an unbroken line of decisions of this court, in land jurisprudence, that the decisions of that department upon matters of fact within its jurisdiction are, in the absence of fraud or imposition, conclusive and binding on the courts of the country.' If the land department must decide what lands shall not be patented, because reserved, sold, granted, or otherwise appropriated, or because not free from pre-emption or other claims or rights at the time the line of the road is definitely fixed, it must also decide whether lands are excepted because they are mineral lands. It has always exercised this jurisdiction in patenting lands which were alleged to be mineral, or in refusing to patent them because the evidence was insufficient to show that they contained minerals in such quantities as to justify the issue of the patent. If, as suggested by counsel, when the secretary of the interior has under consideration a list of lands to be patented to the Northern Pacific Railroad Company, it is shown that part of said lands contain minerals of gold and silver, discovered since the company's location of its road opposite thereto, he would not perform his duty, stated in Knight v. Association, 142 U. S. 161, 178, 12 Sup. Ct. 258, as the 'supervising agent of the government to do justice to all claims, and preserve the rights of the people of the United States,' by certifying the list until corrected in accordance with the discoveries made known to the department. He would not otherwise discharge the trust reposed in him in the administration of the law respecting the public domain. There are undoubtedly many cases arising before the land department, in the disposition of the public lands, where it will be a matter of much difficulty on the part of its officers to ascertain with accuracy whether the lands to be disposed of are to be deemed mineral lands or agricultural lands; and in such cases the rule adopted, that they will be considered mineral or agricultural, as they are more valuable in the one class or the other, may be sound. The officers will be governed by the knowledge of the lands obtained at the time, as to their real character. The determination of the fact by those officers that they are one or the other will be considered as conclusive."

The circumstance that the complainant makes an express allegation in the bill in respect to the character of the lands in dispute at the time of their selection, listing, and certification is unimportant, for it is nothing more than is conclusively implied, as against the defendants, by the certified lists issued to complainant's grantor. Exceptions allowed.