Neel v. Barker, 27 N. M. 605

---

(No. 2571.    Jan. 5, 1922.)

## NEEL v. BARKER

### SYLLABUS BY THE COURT

The restrictions and limitations of the Enabling Act admitting the territory of New Mexico to the Union (36 Stat. 557, c. 310; Act of June 20, 1910) in regard to the sale, lease, conveyance, or contract of or concerning any of the lands granted or confirmed by said act, or the use thereof, or the natural products thereof, do not apply to a grant or lease to explore for oil and gas executed by the commissioner of public lands of the state of New Mexico.

Appeal from District Court, Rio Arriba County; Bratton, Judge.

Action by George M. Neel against William J. Barker. From a judgment affirming the decision of the Commissioner of Public Lands, and denying plaintiff's application for an oil and gas lease on certain state lands, plaintiff appeals. Affirmed.

Francis C. Wilson, of Santa Fé, for appellant.

Harry S. Bowman, Atty. Gen. for appellee.

### OPINION OF THE COURT

RAYNOLDS, C. J.    This is an appeal from the district court of Rio Arriba county affirming the decision of the commissioner of public lands, deny-

ing the application of the appellant for an oil and gas lease upon certain state lands in Rio Arriba county. The appellee, William J. Barker, was the holder of an oil and gas lease issued by the state of New Mexico through the office of the state land commissioner, dated August 29, 1919. The lands included in this lease constituted a portion of those granted by the United States to the territory of New Mexico by an act approved June 21, 1898, known as the "Fergusson Act" (30 Stat. 484). These lands became the property of the state of New Mexico when it was admitted into the Union. On December 15, 1919, the contestant, George M. Neel, appellant here, made an application for an oil and gas lease upon a portion of the same lands which had been previously leased to appellee, furnished and filed with the application an appraisement of the lands, and requested that an oil and gas lease of such lands be put for sale at public auction to the highest and best bidder after public advertisement as provided by section 10 of the Enabling Act (chapter 310, 36 Stat. 557; Act of June 20, 1910). The lease issued to the contestee, appellee here, William J. Barker, was executed and issued to him by the commissioner of public lands without formal appraisement of the lands, without advertisement, and without sale at public auction. Appellant contended that section 10 of the Enabling Act was not complied with. The commissioner rejected the application of appellant, Neel, upon the ground that the lease had previously been executed to appellee, Barker, and was a valid and substituting contract at that time. The commissioner also held the contract with Barker, being an oil and gas lease, for a period not exceeding five years, was by the terms of section 10 of the Enabling Act excluded from its provisions, and that it was not necessary to appraise, advertise, and sell at public auction the lease in question.

The lower court, in affirming the action of the

commissioner, held that the provisions of section 10 of the Enabling Act applied alike to lands which became the property of the state through the grant to the territory by the "Fergusson Act," and to those which had been granted de novo to the state by the Enabling Act. It also held that Congress had power to place such restrictions as it saw fit upon the grant of lands to the state of New Mexico. With these two conclusions of the lower court the appellant states he has no quarrel. He maintains that there are only two questions to be passed upon by this court. He contends, first, that the lease of the appellee, Barker, was such a sale of lands or an interest therein as was required by the terms of the Enabling Act to be appraised, advertised, and sold at public auction; second, that said instrument was a lease, license, or interest not included within the proviso of section 10, to the effect that leases for a term of five years or less could be made without appraisement and sale at public auction. These two points were decided adversely to the contentions of the appellant below, and he brings his appeal to this court.

Eleven errors are assigned, but in his brief appellant confines his discussion to the two propositions above set out, seeking a reversal on the ground that the court below erred in deciding these two contentions against him. In the view we take of the case it is not necessary to determine the nature of the so-called lease issued by the commissioner of public lands, granting to the lessee the right to enter and explore for oil and gas for a term of five years, with provisions of renewal under certain conditions and upon certain payments. Nor is it necessary to determine the interest thereby granted or conveyed. It is conceded by both sides that oil and gas are minerals, and that the lands under which they may be found are mineral lands. The Enabling Act, which is chapter 310, 36 Stat. 557, by its provi-

sions grants certain land to the state of New Mexico, and restricts the sale and the leasing and conveyance thereof, and the natural products of such lands, by provisions making it necessary to appraise, advertise, and sell at public auction these lands, and declaring that, if the provisions are not carried out, the attempted sales, leases, conveyances, and contracts will be void. Section 10 of the act, in so far as it is material to the matter under discussion, is as follows: .

"Nor shall any sale or contract for the sale of any timber or other natural product of such lands be made, save at the place, in the manner, and after the notice of publication thus provided for sales and leases of the lands themselves: Provided, that nothing herein contained shall prevent said proposed state from leasing any of said lands referred to in this section for a term of five years or less without said advertisement herein required.    *    *    *

"Every sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof or the natural products thereof, not made in substantial conformity with the provisions of this act shall be null and void, any provision of the Constitution or laws of the said state to the contrary notwithstanding."

The Enabling Act itself, together with prior enactments by Congress upon the subject, indicates to our mind that only agricultural land and contracts, leases, sales, and conveyances thereof were contemplated by Congress; that the mineral land was specifically reserved by provisions in the act itself, and by prior enactments on the same subject. As is stated by the trial court:

"The act of July 4, 1866 (14 Stat. 86, U. S. Comp. St. § 4613, Fed. Stats. Ann. 2318), expressly provides that all lands valuable for mineral shall be reserved from sale, except as otherwise expressly directed by law; said statute being in the following language: 'In all cases lands valuable for minerals shall be reserved from sale except as otherwise expressly directed by law.' In section 6 of the Enabling Act it is provided that in addition to sections 16 and 36 in each and every township within the proposed state, which had theretofore been granted to the territory, that sections 2 and · 32 in each township should be granted to said state, for the

support of the common schools.   Section 6 further provides that in all cases where said sections 2, 16, 32 and 36, or any parts thereof, were mineral, or had been sold, reserved, or otherwise appropriated or reserved by or under the authority of any act of Congress, or were wanting or fractional in quantity, or where settlement thereon with a view of preemption or homestead, or improvement with a view of desert land entry, then and in either of said events, other lands should be selected in lieu of said mentioned sections.

"Again, it is to be observed that sections 6 to 11, both inclusive, of the Enabling Act, are the ones concerning the lands granted to the state; that section 7 enumerates the institutions for which said lands were granted, with the acreage granted to each, respectively; section 8 provides that the institutions for which said lands are appropriated shall forever remain under the exclusive control of the state, and that no part of said lands shall be used for the benefit of any sectarian or denominational school; section 9 provides for the payment to the state of 5 per cent., less certain enumerated items of the proceeds arising from the sale of all public lands lying within said state which may be sold after the state has been admitted; and section 10 contains the provisions with regard to the sale or the leasing of said lands.   The next succeeding section, numbered 11, expressly provides that the lands granted by said act, in quantity or as indemnity, shall be selected under the direction and subject to the approval of the Secretary of the Interior, from the surveyed, unreserved, unappropriated, and nonmineral public lands of the United States within the said state of New Mexico.   Certain other provisions are contained in said section with respect to who should act for and on behalf of the state, but the vital part of it is that it expressly provides that all of said lands shall be selected from the nonmineral lands of the United States located within said state. With the federal statute providing that mineral lands shall be reserved to the United States, except where otherwise expressly provided by statute, with section 6 of the act granting certain lands, with the provision that if they are mineral other lands shall be selected in lieu thereof, and with the express provision in section 11 that the lands granted under the act shall be selected from nonmineral lands, it is obvious to my mind that Congress never intended to grant to the state any mineral lands whatsoever.   If not, then Congress certainly did not contemplate that the state should follow certain formalities in the execution of leases for mineral purposes.

"It would be utterly inconsistent to say that Congress, by the Enabling Act, intended to provide that no mineral lands should be granted to the state, and at the same time that the state in leasing its mineral lands, which it was not to obtain, should follow the formalities prescribed in section 10 of the act.   When Congress used the word 'lease' with

respect to lands it considered and denominated as nonmineral, it certainly did not have in mind a mineral lease. When the word 'lease' is used with respect to grazing land, a lease for grazing purposes is contemplated; when used in respect to timber lands, a lease for timber purposes is necessarily contemplated; when used regarding agricultural lands, a lease for agricultural purposes is obviously in contemplation, and the same is true with regard to other leases; but when the word is used with respect to lands considered to be nonmineral, certainly a lease for mineral purposes is not in contemplation. The word 'lease,' as used in the Enabling Act, did not contemplate nor include a lease for mineral purposes. Counsel amicus curiae contends that Congress did not intend to grant any mineral lands to the state, but that it knew minerals would, in all human probability, at some later date, be discovered on said lands, and hence the act covers and includes a mineral lease. If this be true, Congress could have expressly provided that, if minerals should be discovered on any of said lands, then leases for such purposes should be made with the same formalities as other leases; but the act contains no such provision, and it is a well-known rule of statutory construction that where no exception is found in a statute, that the Legislature intended none, and that an exception cannot be created by construction, where none is necessary to effectuate the legislative intention. This rule is very clearly and with entire accuracy stated in 25 R. C. L. 972, with authorities sustaining the same. Indeed, no such an exception is here necessary to effectuate the legislative intent. * * * It is well settled by the decisions from both the Supreme Court of the United States and the federal courts that, where lands are conveyed by grant or patent, and it is not known at the time of such conveyance that such lands are mineral, but afterwards are discovered, that such minerals become the absolute property of the owner of the lands, and the United States has no interest whatsoever therein. It is only when it is known at the time of making the grant, or issuing the patent, that such minerals exist, and such knowledge is knowingly or fraudulently withheld from the government, that it can thereafter claim them. This is true, regardless of whether the lands are finally passed by a patent or by clear listing of the same by the Secretary of the Interior. Numerous authorities sustain this proposition. See the following cases: Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; Railway Co. v. United States, 92 U. S. 733, 23 L. Ed. 634; Frasher v. O'Connor, 115 U. S. 102, 5 Sup. Ct. 1141, 29 L. Ed. 311; Mower v. Fletcher, 116 U. S. 380, 6 Sup. Ct. 409, 29 L. Ed. 593; Hough v. Buchanan (C. C.) 27 Fed. 328; Buena Vista Petroleum Co. v. Tulare Oil & Mining Co. (C. C.) 67 Fed. 226; Garrard v. Silver Peak Mines, 94 Fed. 983, 36 C. C. A. 603; Development Co. v. Endersen (D. C.) 200 Fed. 272.

"It is therefore obvious that if minerals were discovered on any of the lands granted to the state, after such grant

had been perfected by the selection of said lands on the part of the state, and after the Secretary of the Interior had approved the same, and that fact was unknown at the time they were conveyed, then and in that event the title and ownership in and to said minerals became absolute in the state, and it could sell, dispose of, or otherwise manage the same as it elected so to do, unless the provisions of the Enabling Act with respect to selling or leasing said lands are broad enough to constitute express statutory enactment governing and controlling the same. Bearing in mind that, in my opinion, Congress did not intend to grant to the state any mineral lands, I conclude that the provisions of the Enabling Act with reference to sale and leasing of said lands do not embrace nor include a lease for mineral purposes, and it follows that the state is not controlled nor restricted by said act in regard to leasing said lands for mineral purposes."

With this conclusion we agree, and the case is therefore affirmed; and it is so ordered.

PARKER, J., concurs.

DAVIS, J., did not participate in this opinion.